**Bill LOCKRIDGE d/b/a Loa Outdoor Advertising d/b/a Lockridge Outdoor Advertising Agency, Plaintiff,**

v.

**CITY OF OLDSMAR, FLORIDA, Defendant.**

No. 8:03–CV–1246–JDW–EAJ.

United States District Court, M.D. Florida, Tampa Division.

Feb. 27, 2007.

E. Adam Webb, William E. Porter, Webb & Porter, L.L.C., Atlanta, GA, Brooks C. Rathet, William L. Bromagen, P.A., Jacksonville Beach, FL, for Plaintiff.

William David Brinton, Cristine M. Russell, Jacksonville, FL, Shauna F. Morris, Frazer Hubbard Brandt, Trask & Yacavone, Dunedin, FL, for Defendant.

### ORDER

WHITTEMORE, District Judge.

**BEFORE THE COURT** is Defendant's Motion for Reconsideration (Dkt. 152), to which Plaintiff has responded in opposition (Dkt. 154). Both parties have been given leave to file supplemental authority (Dkts. 160, 163, 165, 170, 172, 176, 179), and the Court heard the parties' oral argument on October 31, 2006 (Dkt. 177). In this motion, Defendant asks the Court to reconsider its September 27, 2005 order granting Plaintiff's partial motion for summary judgment and denying Defendant's motion for summary judgment (Dkt. 134), in light of an intervening change in controlling law.

Plaintiff brought the instant action claiming multiple provisions of Defendant's sign ordinance violated the First Amendment. In its motion for summary judgment, Defendant argued that Plaintiff could only challenge section 13.3.3(3) of the sign ordinance, the specific provision under which its applications were denied. The Court, bound by the Eleventh Circuit's application of the overbreadth doctrine in *Tanner Advertising Group, L.L.C. v. Fayette County*, 411 F.3d 1272 (11th Cir.2005), held that Plaintiff did have standing to challenge the entire ordinance. The Court found that portions of the ordinance were impermissible content-based restrictions on speech and accordingly granted Plaintiff's partial motion for summary judgment and denied Defendant's motion for summary judgment.

In its motion for reconsideration, Defendant argues that the Court should reconsider its Order based on an intervening change in controlling law. On November 1, 2005, the Eleventh Circuit vacated its opinion in *Tanner Advertising* and granted rehearing. *Tanner Adver. Group, L.L.C. v. Fayette County*, 429 F.3d 1012 (11th Cir.2005). The Eleventh Circuit issued a new decision in *Tanner Advertising* on June 9, 2006, *Tanner Adver. Group, L.L.C. v. Fayette County*, 451 F.3d 777, 791 (11th Cir.2006), and subsequently issued a series of opinions addressing standing in sign ordinance cases. Defendant argues that pursuant to these cases, Plaintiff can only challenge section 13.3.3(3) of the ordinance, while Plaintiff argues that the new case law serves only to confirm the Court's previous decision on standing in this case.

Based on the intervening change in controlling law, the Court finds that Plaintiff does not have standing to challenge the sign ordinance in its entirety. Defendant's motion for reconsideration is accordingly granted, and the Court contemporaneously issues an Amended Order on the parties' cross-motions for summary judgment. Accordingly, it is

**ORDERED** and **ADJUDGED** that Defendant's Motion for Reconsideration (Dkt. 152) is **GRANTED**.

### AMENDED ORDER [1]

**BEFORE THE COURT** are: 1) Plaintiff's Motion for Partial Summary Judgment (Dkts. 69, 70), to which Defendant has responded in opposition (Dkt. 78); and 2) Defendant's Motion for Summary Judgment (Dkt. 83, 84), to which Plaintiff has responded in opposition (Dkt. 92). In addition, the Court considers the arguments set forth in Defendant's Motion for Reconsideration (Dkt. 152), Plaintiff's response

1. As set forth in the contemporaneous order on Defendant's Motion for Reconsideration and as noted herein, due to an intervening change in controlling law, this Amended Order supersedes the Court's September 27, 2005 order on the parties' cross-motions for summary judgment (Dkt. 134).

in opposition (Dkt. 154), the parties' supplemental authority (Dkts. 160, 163, 165, 170, 172, 176, 179), and oral argument on October 31, 2006 (Dkt. 177). Upon reconsideration, Plaintiff's Motion for Partial Summary Judgment (Dkt. 69) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. 83) is **GRANTED**.

### Background

On May 29, 2003, Plaintiff, Bill Lockridge d/b/a LOA Outdoor Advertising d/b/a Lockridge Outdoor Advertising Agency, filed applications with Defendant, City of Oldsmar, for permits for the erection of nine commercial billboards. (Dkt. 84, App.41). On May 30, 2003, the applications were denied based upon § 13.3.3(3) of Defendant's Sign Regulations ("ordinance") set forth in Article XIII of the City's Land Development Code ("LDC"), which specifically prohibited billboards. (Dkt. 84, App.9, Ex. 9).

As of the date of Plaintiff's applications, Article II of the LDC defined a billboard as: "A non-point-of-sale sign which advertises a business, organization, event, person, place or thing, unless such sign is more specifically defined herein." (Dkt. 84, App. 10 at 2). Section 13.3.3(3) of the ordinance provided: "Prohibited signs: Off-premise signs, including billboard signs, except where specifically provided for elsewhere in this Article." (Dkt. 1, Ex. 1 at 4–5). Section 13.1.2(3) provided: "It is the intention of this Article… To prohibit all signs not expressly permitted." (Dkt. 1, Ex. 1 at 2). Pursuant to § 13.1.1, the purposes of the ordinance are:

> to encourage the effective use of signs as a means of communication in the City; to maintain and enhance the aesthetic

environment and the City's ability to attract and maintain sources of economic development; to improve pedestrian and traffic safety; to minimize the possible adverse effect of signs on nearby public and private property; to ensure that signs are constructed, installed and maintained in a safe and satisfactory manner, and to enable the fair and consistent enforcement of this Article. (Dkt. 1, Ex. 1 at 2).

On June 16, 2003, Plaintiff filed this suit against Defendant, challenging the rejection of his applications and the constitutionality of the ordinance. (Dkt. 1, Compl.). Plaintiff seeks injunctive relief in the form of an order declaring the ordinance unconstitutional and void and directing the grant of his applications and allowing erection of the requested billboards. (Dkt. 1). Plaintiff also seeks monetary damages associated with the denial of his applications based on the allegedly unconstitutional ordinance.[2] (Dkt. 1).

On June 15, 2004, Defendant repealed and amended portions of its LDC, including portions of Article II and Article XIII (Ordinance Nos.2004–09 and 2004–10). (Dkt. 31, Exs.1–2). Plaintiff challenges only the constitutionality of the former ordinance in this action. The new ordinance is not before this Court.[3]

On September 27, 2005, the Court granted Plaintiff's Partial Motion for Summary Judgment and denied Defendant's Motion for Summary Judgment. (Dkt. 134). The Court's assessment of Plaintiff's standing was premised on *Tanner Advertising Group, L.L.C. v. Fayette County*, 411 F.3d 1272 (11th Cir.2005), which was vacated

---

**2.** Since filing suit, Plaintiff has withdrawn four of his nine applications. (Dkt. 82). Plaintiff seeks only monetary damages corresponding to the withdrawn applications, not injunctive relief. (Dkt. 82).

**3.** Plaintiff did not apply for permits under the new ordinance. The Court notes, however, that like the former ordinance, the new ordinance prohibits billboards. (Dkt. 31, Ex. 2 at 15).

subsequent to this Court's order. *See Tanner Adver. Group, L.L.C. v. Fayette County*, 429 F.3d 1012 (11th Cir.2005). In light of the Eleventh Circuit's revised holding in *Tanner* and subsequent Eleventh Circuit cases, this Court finds that Plaintiff has standing to challenge only section 13.3.3(3) of the ordinance. Further, this Court concludes that section 13.3.3(3) is constitutional.

### Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R.Civ.P. 56.

### Discussion

The Court considers the threshold jurisdictional issues of standing and mootness before analyzing Plaintiff's constitutional claims. *See Coral Springs Street Sys. v. City of Sunrise*, 371 F.3d 1320, 1327 (11th Cir.2004).

### I. Standing

To meet the constitutional requirements for standing, a plaintiff must show that: 1) it suffered or is immediately likely to suffer an injury in fact; 2) a causal connection exists between the injury and the alleged conduct; and 3) there is a likelihood that a favorable judicial decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Injury in fact means that the plaintiff has suffered or is likely to suffer an injury that amounts to "an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical," and that affects the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560–561, 112 S.Ct. 2130 (*quotations and citations omitted*). Causal connection between the injury and the conduct complained of means that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (*quotations and citations omitted*). Lastly, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (*quotations and citations omitted*).

### A. Application of the Overbreadth Doctrine

As discussed below, Plaintiff has standing to bring both a facial and an as-applied challenge to section 13.3.3(3) of Defendant's ordinance, because that section is the specific provision under which Plaintiff's applications to erect commercial billboards were denied. Plaintiff does not, however, have standing to challenge the multitude of other provisions he alleges allow city officials to exercise unbridled discretion, constitute prior restraints on noncommercial speech, and include various unconstitutional content-based exemptions from the permitting requirements. In its September 27, 2005 order, this Court, bound by *Tanner Advertising Group*,

*L.L.C. v. Fayette County*, 411 F.3d 1272 (11th Cir.2005), held that Plaintiff did have standing to challenge those provisions because he had suffered an injury in fact as to one provision of the ordinance. In its decision vacating *Tanner Advertising*, the Eleventh Circuit did not resolve the question of whether standing to challenge one provision of an ordinance confers standing to bring a facial challenge to the entire ordinance. *See Tanner Adver. Group, L.L.C. v. Fayette County*, 451 F.3d 777, 791 (11th Cir.2006) (electing to save the question "for another day").

■ In short order, the Eleventh Circuit addressed the overbreadth doctrine in *CAMP Legal Defense Fund v. City of Atlanta*, 451 F.3d 1257, 1269, 1274 (11th Cir.2006). *CAMP* involved a challenge to various provisions of the City of Atlanta's festival ordinance. The court affirmed the continuing application of the overbreadth doctrine, but emphasized that it requires a plaintiff, at the summary judgment stage, to establish *injury in fact as to each provision that it challenges, by affidavit or other evidence, CAMP Legal Defense Fund*, 451 F.3d at 1269, 1274 (*emphasis added*). Under *CAMP*, a plaintiff may mount a facial challenge and assert the rights of third parties only to those portions of the ordinance that imminently affect that plaintiff's activities. *Id.* at 1270, 1273. Applying this standard, this Court finds that Plaintiff has failed to show the required injury *in fact* as to each provision he challenges.

In *CAMP Legal Defense Fund*, the Coalition for the Abolition of Marijuana Prohibition (CAMP) applied for and received a festival permit. Because the evidentiary record showed that CAMP had applied for permits in the past and would apply for permits in the future, the Eleventh Circuit found that CAMP was "subject to" certain provisions of the ordinance that allegedly conferred unbridled discretion on city officials, such as allowing city officials to comment on applications and requiring notice to neighborhood planning units. *Id.* at 1275–76. The Court also found that CAMP had standing to challenge certain provisions as prior restraints, such as the 90–day advance period for applications, the requirement for liability insurance, and a seven-week moratorium on applications. *Id.* at 1276–77. The court emphasized that in order to challenge a provision as a prior restraint, the plaintiff must establish that the challenged provision actually "pertains to" its activity and not merely that the plaintiff is subject to the law.[4]

The Eleventh Circuit also determined that CAMP had standing to challenge an exemption from the permitting requirements for events that are "in major part initiated, financed, and executed by the city." The court held that although CAMP was not denied a permit, it was "subject to" the exemption: "CAMP has suffered constitutional injury from the governmental exemption; CAMP must either comply with the permitting scheme or face prosecution, while government-sponsored festival promoters need not comply at all." *Id.* at 1275. This determination was consistent with prior Eleventh Circuit precedent, as it is well-established that when a plaintiff's chosen mode of expression is subject to permitting requirements but other types of expression are not, the plaintiff may challenge those provisions.

---

4. Applying this more stringent standard, the Court found CAMP did not have standing to challenge provisions that allowed city officials to deny permits for past failures to clean up or pay permits fees because CAMP presented no evidence that "it has or imminently will be denied a permit" for those reasons. *Id.* at 1276. Similarly, the court found that CAMP could not challenge the higher permit fees for commercial events, because CAMP's festivals had routinely been classified as noncommercial. *Id.*

*See Beaulieu v. City of Alabaster,* 454 F.3d 1219, 1233 (11th Cir.2003) (holding that ordinance failed to pass strict scrutiny where it required a permit to display a political sign on commercially-zoned property, but exempted residential properties from this requirement); *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250, 1268–69 (11th Cir.2005) (holding that ordinance failed strict scrutiny where it exempted numerous signs from permitting requirements based on their content and constituted an unlawful prior restraint due to the lack of time limits); *Dimmitt v. City of Clearwater,* 985 F.2d 1565 (11th Cir. 1993) (holding that ordinance failed strict scrutiny where it exempted government flags from permit requirement).[5]

■ Plaintiff argues that under *CAMP, Beaulieu, Solantic,* and *Dimmitt* he has standing to bring a facial challenge to various portions of the City's ordinance in addition to the provision under which his permits were denied. For instance, Plaintiff seeks to challenge provisions in the ordinance governing display of political signs, time limits for temporary noncommercial signs, restrictions on banners, and exemptions from the permitting requirements for government flags, temporary holiday decorations, public or government agency signs, noncommercial memorials, noncommercial works of fine art, nameplate and street identification signs, memorials and cornerstones, and personal message signs. The Court finds Plaintiff does not have standing to bring these facial challenges.

Unlike CAMP, which was at all times "subject to" the festival ordinance's permitting requirements and its exemption for city-sponsored events, Plaintiff has not established that he is or could be "subject to" those provisions he challenges. Nor can he show that those provisions "pertained" to his activities. The City's ordinance prohibits all billboards. The Eleventh Circuit has recently held in a series of unpublished cases that when a sign ordinance prohibits billboards, a plaintiff does not have standing to challenge the ordinance's general permitting requirements and exemptions and restrictions on other signs because there is no possibility that the plaintiff could be subject to those provisions.[6]

For instance, in *Advantage Advertising, LLC v. City of Hoover,* the Eleventh Circuit addressed the constitutionality of an ordinance prohibiting off-premise billboards as well as the plaintiff's standing to bring facial challenges to the remainder of the ordinance. *Advantage Adver., LLC v. City of Hoover,* 200 Fed.Appx. 831 (11th Cir.2006). The court held that Advantage lacked standing to make a general challenge to the lack of judicial review and lack of time limits for permitting decisions because it was not "subject to" those provisions, as all off-premises signs were prohibited by the ordinance. *Id.* at 835. The court also found that Advantage could not

5. *Beaulieu* and *Solantic* did not specifically address standing. In *Dimmitt,* the Eleventh Circuit held that the plaintiff, who was seeking to display government flags—which were exempt from the ordinance's requirements—could nevertheless challenge the content-based nature of the ordinance under the overbreadth doctrine. *See Dimmitt,* 985 F.2d at 1570–71.

6. As unpublished Eleventh Circuit precedent, these cases provide persuasive, but not binding authority. *See* 11th Cir. R. 36–2. The Court notes that the Eleventh Circuit ordered supplemental briefing in two cases in order for the parties to address the application of *Tanner* and *CAMP,* and petitions for rehearing in each case have been denied (Dkts. 175–2, 175–3, 178–2); *Granite State v. Cobb County,* 193 Fed.Appx. at 903; *Granite State v. City of Fort Lauderdale,* 194 Fed.Appx. at 756. Accordingly, this Court finds that these analogous cases are highly persuasive authority.

argue that the ordinance constituted an unlawful prior restraint by requiring a permit to erect signs or restricting political speech, because it had not established that the "challenged provision pertains to its activity." *Id.* at 835–36 (*quoting CAMP*, 451 F.3d at 1276); *see also Granite State Outdoor Adver. v. Cobb County*, 193 Fed. Appx. 900 (11th Cir.2006) (finding Granite State was not "subject" to prior restraints, restrictions on other signs, prohibition on obscene and illegal signs, and exemptions for certain signs because off-premises outdoor advertising signs were categorically banned); *Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, 194 Fed. Appx. 754 (11th Cir.2006) (holding Granite State could not challenge provisions as grants of unbridled discretion, as restrictions on political speech, or as content-based exemptions for other signs); *Tinsley Media, LLC v. Pickens County*, 203 Fed. Appx. 268, 2006 WL 2917561 *6 (11th Cir. 2006) (holding that plaintiff had no standing to challenge permitting exceptions because billboards were categorically banned).

Defendant's ordinance prohibits "off-premise signs, including billboard signs, except where specifically provided for elsewhere in this Article." The only discernable difference between this ordinance and those in the Eleventh Circuit cases discussed above is that Defendant's ordinance contains the qualifying phrase, "except where specifically provided for elsewhere in this Article."[7] This difference is immaterial, however, given that it merely states the obvious; there are exceptions in Defendant's ordinance for certain types of off-premises signs, just as there were in the ordinances at issue in *Advantage Advertising* and the *Granite State* cases.

Plaintiff's claimed injury resulted from the denial of his applications to erect billboards. As billboards are categorically prohibited by the ordinance, "[i]f the exemptions that [he] challenges were struck from the statute as unconstitutional, [Plaintiff] still would not be able to erect a billboard." *Granite State v.Fort Lauderdale*, 194 Fed.Appx. at 758. Similarly, Plaintiff has failed to show that he has standing to challenge the alleged lack of procedural safeguards because he has not alleged in his complaint or presented evidence that he intended to construct signs that would otherwise be permitted. *See Granite State v. Cobb County*, 193 Fed. Appx. at 905 ("Granite State may not challenge the lack of procedural safeguards in the permit requirements because it is not subject to them.") Plaintiff accordingly does not have standing to mount a facial challenge to provisions of the ordinance other than section 13.3.3(3).

**B. Section 13.3.3(3)**

*1. Restriction on commercial speech*

■ The Court finds that Plaintiff has met the constitutional requirements for standing to challenge section 13.3.3(3), the specific provision of the ordinance under which his applications were denied, based on his contention that section 13.3.3(3) impermissibly restricts commercial speech. Defendant does not challenge Plaintiff's standing on this claim. (Dkt. 84 at 12). The record establishes that Plaintiff has suffered an injury in fact from the application of section 13.3.3(3), namely the loss of income from the billboards he was not permitted to erect. *See Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. That injury is causally connected to the allegedly unconstitu-

---

**7.** Defendant correctly points out that the only off-premise signs allowed by its ordinance are off-site permanent monument identification signs, under § 13.4.21, which are permitted subject to a number of provisions. Thus, as Plaintiff concedes, the ordinance bans "virtually all off-premise signs" (Dkt. 70–1 at 16), including billboards.

tional ordinance upon which the application denials were based. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Further, there is a likelihood that a favorable judicial decision would redress Plaintiff's injury by permitting the billboards to be erected and money damages to be awarded. *See Lujan,* 504 U.S. at 560–561, 112 S.Ct. 2130. Therefore, the Court will address Plaintiff's argument that section 13.3.3(3) impermissibly restricts commercial speech under *Central Hudson.*[8]

## 2. Favoring commercial over non-commercial speech

■ Plaintiff argues that section 13.3.3(3) impermissibly favors commercial speech over non-commercial speech. Although Plaintiff does not contend that he engages in non-commercial speech,[9] it is undisputed that Plaintiff is "subject to" the off-premises billboard prohibition in section 13.3.3(3). The overbreadth doctrine therefore allows Plaintiff to challenge section 13.3.3(3) and to assert rights of third parties not before the Court. *See CAMP,* 451 F.3d at 1271; *KH Outdoor LLC v. City of Trussville,* 458 F.3d 1261, 1267–68 (11th Cir.2006) (holding that plaintiff was not limited to an as-applied challenge, but could also argue that by restricting the largest signs to commercial billboards, the city unconstitutionally discriminated

against noncommercial speech);[10] *Granite State Outdoor Adver. v. Cobb County,* 193 Fed.Appx. at 904 (upholding district court's determination that off-premises billboard ban did not favor commercial speech over non-commercial speech). Nonetheless, the Court finds in section III A., *infra,* as it did in the September 27, 2005 order, that this argument fails on the merits.

## 3. Unbridled discretion and lack of procedural safeguards

To the extent Plaintiff claims that section 13.3.3(3) allows officials unbridled discretion to determine whether speech is off-premises and lacks time limits for officials to make a permitting decision, he has standing to make these arguments.[11] *See Advantage Adver.,* 200 Fed.Appx. at 834 (upholding district court's determination that these challenges failed).

## II. Mootness

Defendant argues that this case is moot, based on its repeal of the ordinance. Plaintiff contends that the case is not moot, based on the doctrine of voluntary cessation and his acquisition of vested rights in the billboards he applied for.

---

8. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). See section III, B., *infra.*

9. Plaintiff testified in his deposition that he did not remember the last noncommercial advertising display that he operated (Pl. Depo., Dkt. 86, App. 2 at 114, 11. 11–14), and Plaintiff's applications stated that they were for "commercial/outdoor advertising structures" (Schlicte Depo, Dkt. 86, App. 4, Exh. A).

10. Although KH Outdoor was in the business of erecting non-commercial billboards and its applications did not indicate which type of

billboard it was erecting, these facts were not included in the Court's analysis of standing. *See id.* at 1266–68; *Action Outdoor Advert. JV, LLC v. Town of Shalimar,* 377 F.Supp.2d 1178, 1187–88 (N.D.Fla.2005) (noting the lack of clear guidance in the Eleventh Circuit as to whether a plaintiff must demonstrate a substantial interest in noncommercial speech in order to bring a challenge under the overbreadth doctrine). The Court therefore does not assess Plaintiff's interest in non-commercial speech. Moreover, Plaintiff does not challenge the definition of billboard as unconstitutional.

11. *See* Dkt. 1 at ¶¶ 45–53.

A case becomes moot when circumstances subsequent to the challenged conduct preclude a court from awarding a plaintiff meaningful relief. *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998). "[I]f a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs*, 371 F.3d at 1328. A case can become moot based on a change in circumstances or a change in the law. *Id.*

## A. Claim for Injunctive Relief [12]

### 1. Voluntary Cessation

A challenge to the constitutionality of an ordinance which seeks declaratory or injunctive relief is generally mooted by repeal or amendment of the ordinance. *Crown Media, LLC v. Gwinnett County. Ga.*, 380 F.3d 1317, 1324 (11th Cir.2004); *Coral Springs*, 371 F.3d at 1329. Voluntary cessation of a challenged practice will not moot a case, however, unless there is no "substantial likelihood that the challenged statutory language will be reenacted." *Coral Springs*, 371 F.3d at 1329. A case will be moot only where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Nat'l Adver. Co.*, 402 F.3d at 1333 (*quotations omitted*) ("mere speculation" that a law will be reenacted is not enough to preclude a finding of mootness).

A city can establish its intention not to reenact an ordinance by disavowing an intention to do so, by showing that it acted promptly in repealing or amending the old ordinance, or by establishing that the new ordinance was the result of "substantial and conscientious deliberation" and had been "consistently applied" since its enactment. *Coral Springs*, 371 F.3d at 1330, 1332–33 (*quoting Jews for Jesus, Inc.*, 162 F.3d at 629). Further, governmental entities are given "considerably more leeway" than private parties in the presumption that they are unlikely to reenact repealed laws. *Id.* at 1328–29.

Defendant has asserted that it has no intention of reenacting the former ordinance.[13] (Dkt. 58 at 173, Dkt. 74 at 7, ¶ 8, Dkt. 109). As a governmental entity, Defendant is entitled to the presumption that it is unlikely to do so. *See Coral Springs*, 371 F.3d at 1328–29. Further, there is undisputed record evidence that Defendant began "looking at the sign regulations" and determined that the ordinance "needed to be updated" in April, 2003, at least one month before Plaintiff filed his applications and two months before suit was filed.[14] (Dkt. 58 at 151–52, Dkt. 109 at 2, Dkt. 31, Exs. 1–9). It cannot be disputed that the amendment process began well before Plaintiff's suit was filed and was not in response to this lawsuit. That the new ordinance took over one year to enact suggests Defendant engaged in "substantial and conscientious deliberation," which strengthens the presumption that the for-

**12.** The Magistrate Judge analyzed the mootness issue extensively in her Report and Recommendation on Plaintiff's Motion for Preliminary Injunction (Dkt. 74), which was adopted by this Court (Dkt. 109).

**13.** Bruce Haddock, City Manager, testified at the hearing on Plaintiff's motion for preliminary injunction that the City had no intention to enforce the former ordinance. (Dkt. 58, p. 173).

**14.** Greg Scoville, the City Director of the Department of Community Development, testified at the hearing on Plaintiff's motion for preliminary injunction that he was instructed to "review the codes and become familiar with the codes" in January, 2003. (Dkt. 58, p. 151–52, Dkt. 109, p. 2).

mer ordinance will not be reenacted. Plaintiff has offered no evidence of a substantial likelihood that the former ordinance will be reenacted. On this basis, therefore, Defendant's voluntary cessation of the former ordinance renders moot Plaintiff's claim for injunctive relief.

### 2. Vested Rights

■ Even if the voluntary cessation doctrine would otherwise moot his claim, Plaintiff asserts that the case is not moot because he had vested rights in the billboards at the time he submitted his applications and prior to the repeal of the ordinance. The Eleventh Circuit has recognized that "a party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law." *Crown Media, LLC*, 380 F.3d at 1325 (*citing Coral Springs*, 371 F.3d at 1333).

■ Whether the right to a permit is vested is a question of state law. *Coral Springs*, 371 F.3d at 1333. Pursuant to Florida law, "vested rights can be created—thus creating an enforceable entitlement in the face of subsequent changes in the law—only in two circumstances," namely where there are conditions of "equitable estoppel" or where there is a "clear showing of bad faith." [15] *Id.* at 1334.

■ Bad faith has been found where a city's conduct is an "arbitrary," "hasty," "blatant" or "obvious" attempt to "single out" an applicant to avoid granting a permit or facing a legal challenge. *Id.* at 1336–38. Specifically, a city will be found to have acted in bad faith where it deliberately and arbitrarily withholds a permit until after a change in the law. *Id.* at 1336 (*citing Aiken v. E.B. Davis, Inc.*, 106 Fla. 675, 143 So. 658 (1932) and *Dade County v. Jason*, 278 So.2d 311, 311–12 (Fla.Dist.Ct. App.1973)). A city will also be found to have acted in bath faith where it waits to amend a law until after it has been sued and a court has ordered it to grant an application it denied based on the unconstitutional law. *Id.* at 1336–37 1336 (*citing Harris v. State ex. rel. Wester*, 159 Fla. 195, 31 So.2d 264 (1947)). Although bad faith may be evidenced by amendment or repeal of a challenged law *after* suit is filed, the timing of the amendment or repeal is not conclusive. *Id.* at 1337.

In this case, it is undisputed that the new ordinance was not enacted until one year after Plaintiff filed suit. However, contrary to Plaintiff's arguments, the repeal and amendment of the ordinance following Plaintiff's initiation of this lawsuit does not itself demonstrate bad faith. *See Coral Springs*, 371 F.3d at 1337. There is no evidence that Defendant denied Plaintiff's applications or amended the ordinance in a blatant or obvious attempt to single Plaintiff out. *See id.* In fact, the record suggests the contrary is true.

Defendant began the amendment process in April, 2003, before Plaintiff's applications were filed, and thereafter engaged in "substantial and conscientious deliberation," ultimately repealing and amending the ordinance one year later. (Dkt. 58, p. 151–52, Dkt. 109, p. 2, Dkt. 31, Exs.1–9). *See Coral Springs*, 371 F.3d at 1330, 1332–33. A period of one year for repeal and amendment of the ordinance is reasonable, given the complex nature and breadth of the sign ordinance. Even if Defendant had expedited the amendment process, it is unlikely that it would have been able to

---

**15.** Plaintiff does not assert that he acquired vested rights in the billboards as a result of

equitable estoppel.

draft a comprehensive, complex and constitutionally sound sign ordinance within the six week period between the denial of Plaintiff's applications and the filing of this lawsuit.[16]

It is apparent that Defendant did exactly what it should have done when it repealed and amended its sign ordinance. Defendant is required by law to maintain and enforce sign regulations. *See* FLA. STAT. § 163.3202(2)(f). The ordinance had been amended numerous times and it is reasonable to have expected that changes to the regulations would need to be made. (Dkt. 84, App.8). There is no evidence that Defendant amended the ordinance in a deliberate attempt to avoid granting Plaintiff's applications or as a result of facing Plaintiff's legal challenge. Defendant persuasively maintains that Plaintiff's applications would have been denied under the former ordinance *and* the new one, so amendments to the ordinance would not have affected Plaintiff, regardless of when they were made.

Plaintiff has failed to make a "clear showing of bad faith" by Defendant. *See Coral Springs*, 371 F.3d at 1334. Accordingly, Plaintiff has no vested rights in the billboards so as to save his claim for injunctive relief.

**B. Claim for Monetary Damages**

 Claims for monetary damages associated with a challenged law are not mooted by repeal or amendment of the law. *Crown Media, LLC*, 380 F.3d at 1325; *Granite State Outdoor Adver., Inc.*, 351 F.3d at 1119; *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1519 (11th Cir. 1992). Money damages stemming from the application of an unconstitutional law

may provide a plaintiff with meaningful relief and in those circumstances, the claim for damages is not moot. *See Jews for Jesus, Inc.*, 162 F.3d at 629. Accordingly, Defendant's repeal or amendment of the ordinance does not moot Plaintiff's claim for damages.

In sum, although Plaintiff's claim for injunctive relief is moot, he can proceed with his constitutional challenge and his claim for monetary damages.

**III. First Amendment Analysis**

**A. Favoring Commercial over Noncommercial Speech**

 Commercial speech and noncommercial speech are treated differently for purposes of First Amendment analysis. *Metromedia, Inc.*, 453 U.S. at 501–02, 101 S.Ct. 2882; *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Commercial speech may be regulated, whereas noncommercial speech may not. *Southlake Prop. Assocs. v. City of Morrow*, 112 F.3d 1114, 1116 (11th Cir.1997). Regulations favoring commercial speech over noncommercial speech or otherwise placing restrictions on noncommercial speech are subject to strict scrutiny by the Courts. *Id.; Cafe Erotica of Fla., Inc. v. St. John's County*, 360 F.3d 1274, 1286–87 (11th Cir.2004).

 Plaintiff argues that Defendant's ordinance impermissibly favors commercial speech over noncommercial speech. Specifically, Plaintiff alleges that the ordinance banned all off-premises signs, whether commercial or noncommercial, while allowing on-site signs. Because non-

---

**16.** The Magistrate Judge noted in her Report and Recommendation on Plaintiff's Motion for Preliminary Injunction that: "Enacting an ordinance is not accomplished overnight. The new ordinance is thirty-three pages in

length (not counting the definitions section and the pictorial aids) and contains several pages of whereas clauses describing the City's purposes behind regulating signs." (Dkt. 74).

commercial messages do not ordinarily pertain to the site on which they are posted, Plaintiff argues that the ordinance's ban on off-site signs restricts noncommercial speech more than commercial speech.

Plaintiff's argument is not persuasive. The Eleventh Circuit has held that "noncommercial messages are inherently onsite," and "[t]he definition of billboard as an offsite advertising sign does not include noncommercial speech...." *Coral Springs*, 371 F.3d at 1344; *Southlake Prop. Assocs.*, 112 F.3d at 1118–19. Because the ordinance defined a billboard as a "non-point-of-sale" or "off-premise" sign, only off-site billboards, not on-site signs, were prohibited by the ordinance. Defendant's ordinance did not favor commercial over noncommercial speech because the prohibitions on billboards did not apply to noncommercial signs. *See Coral Springs*, 371 F.3d at 1344 ("according to the law of this Circuit, noncommercial messages are by definition onsite signs and therefore [are] certainly not treated unfavorably compared with other signs").

## B. *Central Hudson*

■ Because of its earlier holding, this Court did not reach Plaintiff's argument that section 13.3.3(3) was an invalid restriction on commercial speech under *Central Hudson*. Although Plaintiff has standing to bring this claim, the case law on this question dictates that Plaintiff's claim is without merit.

■ It is well-established that the Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." In *Central Hudson*, the Supreme Court adopted a four-part test to determine the validity of government restrictions on commercial speech:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Metromedia, Inc.*, 453 U.S. at 507, 101 S.Ct. 2882 (*citing Central Hudson*, 447 U.S. at 564, 100 S.Ct. 2343).

"[T]he *Metromedia* decision controls the 'law of billboards.'" *Cafe Erotica of Fla., Inc.*, 360 F.3d at 1286. In *Metromedia*, the Supreme Court held that there was "little controversy" over the first, second, and fourth prongs of the *Central Hudson* test as it applied to a ban on off-premises commercial billboards. *Id.* at 505, 507, 101 S.Ct. 2882 (noting that it would "consider separately the effect of the ordinance on commercial and noncommercial speech"). As in the instant case, there was no suggestion that the advertising involved unlawful activity or was misleading. *Id.* at 507, 101 S.Ct. 2882. The Court also found that the stated goals of the ordinance—traffic safety and aesthetics—were substantial government goals and that the lawfulness of these interests was well-established. *Id.* at 507–08, 101 S.Ct. 2882. Section 13.1.1 of Defendant's ordinance likewise includes among its stated purposes "to maintain and enhance the aesthetic environment" and "to improve pedestrian and traffic safety." (Dkt. 1, Ex. 1 at 2). Finally, the Supreme Court found that the ordinance was no broader than necessary because it did not prohibit all billboards, rather allowing onsite advertising and exempting other specific signs from the ordinance's regulations. *Id.* at 508, 101 S.Ct. 2882. Similarly, Defendant's ordinance allows onsite signage and exempts certain signs from the permit requirements.

The Supreme Court found that the more serious question was whether the prohibition of off-site advertising "directly advanced" the goals of traffic safety and aesthetics. Noting the "meager record" on this issue, the Court agreed with the California Supreme Court that, as a matter of law, "a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should not be set aside." *Id.* at 508–09, 101 S.Ct. 2882. Similarly, the Court found that billboards may properly be perceived as an aesthetic harm, absent evidence of any other impermissible purpose. *Id.* at 510, 101 S.Ct. 2882. Finally, the Court held that the fact that the ordinance was underinclusive by allowing on-site advertising did not negate the fact that it directly advanced government interests. *Id.* at 511–12, 101 S.Ct. 2882.

In the instant case, Plaintiff has introduced no evidence establishing that Defendant's stated reasons were "palpably false" or that they were merely a "public rationalization of an impermissible purpose." *Id.* at 509–10, 101 S.Ct. 2882. The Court therefore finds that the ban on off-site billboards advances the stated governmental interests in traffic safety and aesthetics. *Id.* at 509–11, 101 S.Ct. 2882 (finding judgment of local lawmakers as to relative interests served by sign ordinance was sufficient absent any evidence that stated reasons were palpably false or a public rationalization of an impermissible purpose).

For the reasons discussed, this Court finds that 13.3.3(3) is not an unconstitutional restriction on commercial speech. *See also Granite State v. Cobb County,* 193 Fed.Appx. at 904–05 (upholding ordinance prohibiting off-premises outdoor advertising signs under *Central Hudson); Action Outdoor Adver. JV, LLC v. Town of Shalimar,* 377 F.Supp.2d 1178, 1189–1192 (N.D.Fla.2005) (same).

## C. Unbridled Discretion and Lack of Time Limits

■ Section 13.3.3(3) does not grant officials unbridled discretion, as "their discretion is limited to the objective determination of whether a sign is off-premise or on-premise." [17] *Advantage Adver.,* 200 Fed.Appx. at 834; *see also Granite State v. Fort Lauderdale,* 194 Fed.Appx. at 757 (noting in dicta that city officials had no discretion to deny billboard applications under ordinance banning billboards). Nor the does the lack of time limits render section 13.3.3(3) unconstitutional, since the absence of time limits is acceptable in a content-neutral permitting scheme. *Advantage Adver.,* 200 Fed.Appx. at 834 (citing *Granite State Outdoor Adver., Inc. v. City of St. Petersburg,* 348 F.3d 1278, 1283 (11th Cir.2003)).

### *Conclusion*

The Court finds that section 13.3.3(3) is constitutional to the extent Plaintiff has standing to challenge it. Because Plaintiff has failed to demonstrate a constitutional violation, in either an as-applied or a facial claim, no damages are warranted. Accordingly, it is

**ORDERED** and **ADJUDGED** that:

1) Plaintiff's Partial Motion for Summary Judgment (Dkt. 69) is **DENIED**;

2) Defendant's Motion for Summary Judgment (Dkt. 83) is **GRANTED**;

---

**17.** Plaintiff has not argued that the exception to the off-premises sign ban for permanent monument identification signs in 13.4.21, which is referred to in section 13.3.3(3), is a grant of unbridled discretion. In any event, the criteria specified in section 13.4.21 are "narrow, objective, and definite standards" that adequately guide in the application of this exception. *CAMP Legal Defense Fund,* 451 F.3d at 1279.

3) All other pending motions are **DENIED** as moot;

4) The Clerk of Court is directed to close the case.